Deris Delinore **SOLOMON**, Petitioner–Appellee/Cross–Appellant,

v.

Bruce **CURTIS**, Respondent–Appellant/Cross–Appellee.

Nos. 00–1692, 00–1760.

United States Court of Appeals, Sixth Circuit.

Oct. 2, 2001.

Before SUHRHEINRICH, SILER, Circuit Judges; and HOOD,* District Judge.

PER CURIAM.

## I.

Petitioner–Appellee/Cross–Appellant Deris Delinore Solomon was convicted of unarmed robbery after a jury trial in Jackson County, Michigan and sentenced to imprisonment for 25 to 40 years. The Michigan Court of Appeals affirmed Solomon's conviction. It rejected his argument that he was denied a fair trial because the victim positively identified him in court, finding any error harmless in light of the overwhelming evidence against Solomon, including his identification by several other witnesses. The Michigan Court of Appeals also found that the trial court abused its discretion in not allowing Solomon to testify, but concluded that the error was harmless beyond a reasonable doubt, in light of the overwhelming evidence against Solomon. The Michigan Supreme Court denied leave to appeal, and the United States Supreme Court denied certiorari.

After exhausting his state court remedies, Solomon filed this federal habeas petition pursuant to 28 U.S.C. § 2254. The district court granted the petition as to his claim that the trial court's refusal to allow him to testify in his own defense violated his rights under the Fourteenth Amendment Due Process Clause, the Sixth Amendment Compulsory Clause, and the Fifth Amendment Self–Incrimination Clause. Respondent–Appellant/Cross–Appellee Bruce Curtis appeals this ruling. The district court denied Solomon's claim that the trial court's admission of the complainant's identification testimony violated his Fourteenth Amendment Due Process Clause right to be free of unreliable identification evidence. Petitioner Solomon cross-appeals this issue. On July 6, 2000, the district court granted a certificate of appealability as to the claim raised in Solomon's appeal.[1]

## II.

This Court reviews the district court's conclusions of law in a habeas proceeding de novo and its factual findings for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir.1999). A writ should not be issued unless the record reflects an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353(1993). Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a writ may not issue unless the state court adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

\* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. The Criminal Justice Legal Foundation has filed an amicus brief in support of Respondent Curtis.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## A.

Respondent Bruce Curtis challenges the district court's finding that Solomon had not waived his constitutional right to testify in his own behalf and its legal conclusion that the right is not amenable to the harmless error analysis.

■ After both sides had rested and shortly before the jury received instructions, Solomon asked to testify. The state trial court denied the request, ruling that the defendant was "playing games with the Court." The state appellate court, however, found that Solomon had not waived his right to testify, and the trial court had violated Solomon's constitutional right to testify on his own behalf. It nonetheless concluded that any error was harmless beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), because of the overwhelming evidence against Solomon.

The district court agreed with the state appeals' court finding that Solomon had not waived his right to testify. On the other hand, the district court determined that the constitutional violation was a structural error not subject to a harmless error analysis.

As we recently noted in an unpublished decision, *Skeens v. Haskins,* 248 F.3d 1151, 2001 WL 128432, 4 Fed.Appx. 236 (6th Cir. Feb. 6, 2001), it is unclear whether the trial court erred in denying Solomon the right to testify after the close of evidence.

"[A] criminal defendant has a fundamental constitutional right to testify on his own behalf." *Neuman v. Rivers,* 125 F.3d 315, 318 (6th Cir.1997) (quoting *Rock v. Arkansas,* 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). Nevertheless, the right to testify on one's own behalf may be limited "to accommodate other legitimate interests in the criminal trial process" that are not "arbitrary or disproportionate to the purpose they are designed to serve." *Id.* A rule generally limiting testimony to the evidence-taking phase is not "arbitrary or disproportionate to the purpose [it is] designed to serve." *United States v. Jones,* 880 F.2d 55, 60 (8th Cir.1989) (citing *Rock,* 483 U.S. at 56) (alteration in original). "While placing only a minor limitation on the right [to testify], the rule promotes both fairness and order in trials, interests which, of course, are crucial to the legitimacy of the trial process." *Id.* As in the instant case, *Jones* involved a defendant who had not asserted his right to testify until after the close of the evidence-taking stage of the trial but before the case had been argued and sent to the jury. *Id.* at 60 n. 5. The Eighth Circuit upheld the district court's decision not to allow the defendant to testify. Thus, it is not clear that the trial court erred in denying [the defendant] the right to testify after the close of evidence.

2001 WL 128432, at *2. Notwithstanding, as in *Skeens,* we need not resolve this issue today, because it likewise is clear that any error is harmless. *See id.* ("Yet, we need not decide this issue today, as it is clear that any error was harmless.").

[The petitioner's] contention that the [Michigan Court of Appeals] improperly applied the harmless-error test to his case is without merit. *See Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.1991); *Ortega v. O'Leary,* 843 F.2d 258, 260–63 (7th Cir.1988); *Wright v. Estelle,* 549

F.2d 971, 974 (5th Cir.1977). Because the state appellate court properly applied the harmless-error test of *Chapman* to Skeen's claim on direct review, federal review is limited to the harmless-error standard of *Brecht*. As the Supreme Court noted in *Brecht*, "[o]verturning final and presumptively correct convictions on collateral review because the State cannot prove that an error is harmless under *Chapman* undermines the States' interest in finality and infringes upon their sovereignty over criminal matters." *Brecht*, 507 U.S. at 637.

[The petitioner's] argument that his championed error was "structural error" is without merit. Most errors do not automatically render a trial unfair and thus, can be harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In *Fulminante*, the Court enumerated the wide variety of constitutional errors subject to harmless-error analysis. *Id.* at 306–07. Indeed, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). [The petitioner's] contention does not overcome this presumption.

*Id.* Thus, the district court in this case erred in overturning the Michigan Court of Appeals' ruling that the denial of the defendant's right to testify was harmless rather than structural error. Furthermore, the Michigan Court of Appeals' decision was not contrary to federal law and was not unreasonable in light of the overwhelming evidence of Solomon's guilt. In short, the district court's issuance of the writ was improper.

**B.**

■ In his cross-appeal Solomon argues that the district court erred in denying his claim that the Michigan Court of Appeals unreasonably found the erroneous admission of the victim's unreliable identification testimony to be harmless. In other words, Solomon claims that the Michigan Court of Appeals' conclusion that the admission of the identification testimony was harmless was an unreasonable application of *Chapman, supra.*

As the district court determined, although neither the state trial court nor the Michigan Court of Appeals expressly conducted an analysis under the relevant Supreme Court precedent, *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), many of the state court's factual findings correspond to the *Biggers* factors. Thus, as the district court concluded, "the circumstances surrounding Madden's [the victim's] identification of Solomon provided sufficient indicia of reliability such that the state court's decision to permit an in court identification was a reasonable application of clearly established Supreme Court law."

■ In any event, it cannot be seriously argued that the Michigan Court of Appeals' finding that any error was harmless violates § 2254(d)(1). Solomon does not contend, let alone provide support for the proposition that an erroneous in court identification is a structural error not subject to harmless error analysis. Furthermore, given all of the evidence against Solomon, namely that the victim's keys were found in his possession, the fact that he was caught very close by soon after the assault, and the proximity of the victim's wallet and pocket lining to Solomon's hiding place, and his identification by two other witnesses, the Michigan Court of Appeals' ruling was not an unreasonable application of the harmless error doctrine as defined by the Supreme Court.

## III.

For all the foregoing reasons, we **RE-VERSE** the district court's grant of the writ of habeas corpus with respect to Solomon's claim that the trial court refused to allow him to testify; and we **AFFIRM** the district court's denial of Solomon's request for a writ of habeas corpus regarding his claim that the trial court violated his Fourteenth Amendment right to be free from a trial tainted by unnecessarily suggestive identification procedures.