81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mark Augustine LUGO, Petitioner-Appellant,
v.
Robert BORG, Warden; James H. Gomez, Attorney General of
the State of California, Respondents-Appellees.
 No. 92-56525.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 22, 1996.*
Decided April 3, 1996.
 
 Before: CHOY, SNEED, and SKOPIL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mark Augustine Lugo, a California state prisoner, appeals the denial of his request for habeas corpus relief. We affirm.
 
 
 3
 I. Factual and Procedural Background.
 
 
 4
 At approximately 7:00 a.m. on November 16, 1987, Eydie Lopez was found dead in her car in a dirt lot across the street from a Denny's Restaurant. At 11:00 a.m. that morning, Lugo called Lopez's home and a police officer investigating the murder answered the telephone. Lugo asked what had happened to Lopez and stated that he thought something had happened because he heard the voice of Detective Narramore, one of Lugo's teachers at the police academy. Lugo also mentioned that he had left a message for Lopez to meet him at 4:45 a.m. that morning.
 
 
 5
 Narramore and another officer approached Lugo at work and he agreed to accompany them to the police station. Narramore testified that, during the ride to the station, Lugo stated that Lopez had been "okay" when he left her at Denny's at approximately 5:00 a.m. that morning.
 
 
 6
 The police placed Lugo in an interview room and advised him of his Miranda rights, which Lugo waived. After approximately four hours of questioning, the police formally arrested Lugo. Before his arrest, the police obtained written consent to photocopy the soles of his shoes and to search his truck and home.
 
 
 7
 At approximately 2:00 a.m. on November 17, Lugo reached his cell and slept for approximately three hours. At 11:00 a.m., the police again advised Lugo of his Miranda rights and he again waived them. After an hour of questioning, Lugo confessed to killing Lopez. On April 18, 1988, Lugo was charged with murder and the use of deadly weapons.
 
 
 8
 Prior to trial, Lugo filed a motion to suppress his confession on the Fifth Amendment ground of involuntariness. The trial court denied Lugo's motion, finding that under the totality of the circumstances, Lugo's confession was a product of his free will and there was no inappropriate or lawless conduct on the part of the police. The trial court also denied Lugo's separate motion to suppress his confession and consents to search on the Fourth Amendment ground of unreasonable search and seizure.
 
 
 9
 A jury found Lugo guilty of first degree murder and found the deadly weapons charge to be true. On March 24, 1989, Lugo was sentenced to twenty-six years to life. On April 10, 1989, Lugo appealed his conviction and sentence to the California Court of Appeal, which affirmed both his conviction and his sentence. The California Supreme Court denied Lugo's petition for review. On January 9, 1992, Lugo filed a federal habeas petition, which the district court denied on October 21, 1992. Lugo timely appeals.
 
 
 10
 II. Voluntariness of Confession.
 
 
 11
 A. Standard of Review.
 
 
 12
 We review the voluntariness of a confession de novo. United States v. Kelly, 953 F.2d 562, 564 (9th Cir.1992). The government must establish voluntariness by a preponderance of the evidence. Id. The federal habeas court must make an independent determination of the ultimate issue of whether the confession was voluntary. Miller v. Fenton, 474 U.S. 104, 112 (1985). State court findings on subsidiary factual issues, however, "such as whether a drug has the properties of a truth serum, or whether in fact the police engaged in the intimidation tactics alleged by the defendant," are conclusive on the habeas court if fairly supported on the record. Id. (citation omitted).
 
 
 13
 B. Lugo's Confession Was Voluntary.
 
 
 14
 Lugo alleges that the police coerced his confession through a variety of improper techniques: (1) exploiting his lack of sleep; (2) exploiting his student-teacher relationship with one of the interrogating officers and his desire to become a police officer; (3) using threats and implied promises that he could avoid a serious charge if he confessed; (4) using a psychologist to determine his "breaking point"; and (5) using deception throughout the interrogation. Appellant's Opening Brief at 23-25. These allegations lack merit.
 
 
 15
 The trial court found that Lugo did not appear to be tired nor did he complain of being tired on either November 16 or 17. The trial court also found that Lugo did not enjoy a friendship or close relationship with the interrogating officer. These findings are fairly supported by the record and are conclusively presumed correct.
 
 
 16
 The trial court also found that the officers did not make any threats or promises of leniency. Indeed, Narramore clearly dispelled any misunderstanding Lugo may have had. In response to Lugo's request to "Go from your premeditated to your manslaughter charge," Narramore responded: "I'm not offering anything to you. I'm telling you to tell me the truth." Appellee's Brief at 28.
 
 
 17
 Nor was the use of a psychologist coercive. Unlike the psychologist in Leyra v. Denno, the psychologist here did not pretend to be a regular physician, attempt to extract a confession using hypnotic techniques, or proceed with the session after the defendant had stated that he was tired and could not think. 347 U.S. 556, 559-61 (1954). Nothing in the record indicates that the psychiatrist was used to break Lugo's will.
 
 
 18
 Neither did the officers' misrepresentations render the confession involuntary. Although the officers lied to Lugo about eyewitnesses who could place him at the scene of the murder, this is not the type of deception that generally leads to a coerced confession. "Of all the numerous varieties of police trickery, however, a lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary." Holland v. McGuire, 963 F.2d 1044, 1051 (7th Cir.1992), cert. denied, 506 U.S. 1082 (1993). See also Frazier v. Cupp, 394 U.S. 731, 739 (1969) (holding that interrogator's misrepresentation to the suspect that his co-suspect had already confessed did not render the confession coerced). The record indicates that Lugo's confession was voluntary.[1]
 
 
 19
 III. Lugo had a full and fair opportunity to litigate his Fourth Amendment claims in the state court.
 
 
 20
 Lugo argues that the district court erred by declining to review his claims that his confession and his consent to search violated the Fourth Amendment.
 
 
 21
 "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). Here, not only did this opportunity exist, but Lugo took advantage of it. Before the state trial court, Lugo filed a suppression motion challenging the validity of his arrest, his confession and his consent to search on the Fourth Amendment ground. The district court properly declined to review his Fourth Amendment claims. See id.; Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir.1990).
 
 
 22
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In his reply brief, Lugo for the first time asserts that the district court received only the audio tapes, not the transcripts, of his interrogation and confession. As he identifies no material difference between the tapes and the transcripts, however, his claim lacks merit, even if he had properly raised the claim. See Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir.1991) ("Failure to raise or brief an issue in a timely fashion may constitute waiver of the issue on appeal.")